Number 162271 Pan Am Railways, Inc. v. The U.S. Department of Labor at all. Good morning. May it please the Court, my name is Andrew Rolfes, I represent the petitioner, Pan Am Railways in this case, and I'd like to reserve two minutes for rebuttal if I may. Yes. This case involves important issues under the Federal Railroad Safety Act regarding the ability of a railroad to maintain and enforce safety and conduct rules. I'd like to start with the issue of punitive damages in this case. In this case, the Department of Labor Administrative Law Judge awarded Jason Ray $250,000 in punitive damages because Pan Am conducted an investigation to determine whether Mr. Ray lied about the circumstances in which he injured his ankle. That award of punitive damages was not supported by substantial evidence and it should be vacated. Counsel, I agree this is an important issue, but you've not argued that either the ALJ or the Administrative Review Board made any error of law. You have simply not argued that. You have not raised any constitutional claim here. You've simply raised the argument of evidence insufficiency and I believe you have conceded that the standard of review, both for us and for the Administrative Review Board, is abuse of discretion and that this is not a discretionary determination in the trial judge who heard this case. So you've given away, if you will, the usual grounds on which a circuit court reviewing such a question might rule in your favor. Two or three days ago the Supreme Court reminded the circuit courts that sometimes abuse of discretion review is actually required by the law and they gave reasons for it. So I think, and it's perfectly clear under abuse of discretion review, that even if we have thought that an award was too high, that's really not the question. So can you be very precise in your arguments against that backdrop which does not work in your favor? Understood, Your Honor. But there are two things about the award of punitive damages in this case that we think warrant reversal of that award even under an abuse of discretion standard. Number one, the principal basis for the ALJ's award of punitive damages in this case was a finding that Pan Am has this workplace culture of discouraging employees from reporting on-the-job injuries. And in support of that finding, the ALJ cited the fact that when an employee reports an injury, Pan Am conducts an investigation. That's true. But if you look at the Seventh Circuit's recent decision in the Coase-Barr case, there's nothing It is kind of amazing that in more than 98 percent of the cases, there's a discipline charge brought against the injured employee for violating workplace rules. And there's no evidence in the record, Your Honor, that any employee was disciplined who did not violate a workplace rule. And that's how the collective bargaining agreement requires Pan Am to conduct investigations. It's not like other industries. I mean, there's an argument made that what Pan Am should have done was conduct some sort of informal investigation. But that's not how it works in the railroad industry. I'm sorry, but the ALJ found, as a matter of fact, against you on that point. He found that there was nothing in the collective bargaining agreement that would have precluded a simple conversation with the injured employee about the supposed discrepancy between what is filed with the Department of Labor and the statement made. It did strike me as sort of overkill to charge him with dishonesty without first asking him whether there was an explanation for it. Well, and Pan Am's witness at the hearing before the ALJ testified, when there is reason to believe that an employee has engaged in misconduct, what they have to do is go through the collective bargaining agreement process. And in this case, there was no reason for that letter. It's on letterhead. It starts with the sentence, my name is Jason Ray. I live at his home address. It continues on. It's got a signature block. Why not just ask him? Because they had, it's right there in black and white in front of them. And why respond with an extremely hostile, we may fire you because you've been dishonest when you've done no preliminary investigation of whether there was dishonesty or not. Your Honor, the process that's at issue here is actually procedural protection for the employees. In other industries, if the vice president of your division comes to an employee and says, hey, come in here, let me ask you why. Are you saying the ALJ made an error of fact in his conclusions? I'm saying the ALJ made an error of fact in his conclusions for a number of reasons. And among those are number one, the discrepancy, the inconsistency between the two statements in the OSHA letter and his prior testimony is irreconcilable. No, no, no, no. The ALJ found that it wasn't irreconcilable. And our position, Your Honor, on that point is that that finding is not supported by substantial evidence because the testimony was that he was holding on to the grab irons with both hands. He stepped down carefully with one foot on a stirrup and he did not fall. That's what he testified in the first hearing. Then in the letter it says, I fell hard to the ground injuring my ankle. And so those two statements can't be reconciled. There's a reason why he testified that he was holding on. I understood your defense at the hearing before the Department of Labor judge to be that what he said in the OSHA complaint letter was that he had fallen straight from the railway car to the ground, that there hadn't been an intermediate step. But that's not the way I read it. I'm sorry, Your Honor. The testimony was that he stepped carefully down and did not fall. He specifically said he did not fall. And you're contrasting that with the subsequent statement that he fell hard to the ground. Correct, Your Honor. Yes, but where did he fall hard to the ground from? Was it the step or as your client apparently articulated, he just fell out of the car? No, I don't think that's what the testimony was. I mean, there was no dispute he's descending from the car. I think that's what Pan Am's witness referred to. So there's the award of punitive damages, if I may, Ferdinand. Yes, please. The award of punitive damages is not based on substantial evidence because of that finding, but also because it's premised principally on the finding of what happened in the first investigation. And in the first investigation, Osher ruled that Pan Am acted lawfully and appropriately. In the first part of it, it was a claim about the written reprimand that was issued to Mr. Wray. And the judge cites Mr. Wray's experience, and that's really the only evidence in the record of that practice, as the basis for awarding punitive damages. I understand that argument. There's something else that the ALJ relied on, and that was the involvement of the law department of the railroad, that it apparently made the decision that the appropriate response here was to charge someone with dishonesty without further termination of his employment. And this isn't just a sort of lower-level supervisor. This involves the law department, and that itself is a reason to teach the company a lesson. The law department passed the complaint along to Mr. Schultz for review. And he says, and the decision then was not his alone. It was made with the law department. That's correct, Your Honor. May it please the Court, my name is Dean Romheld on behalf of the Department of Labor. Your Honor, in this appeal, Pan Am has challenged only the various factual determinations and exercise of discretion by the ALJ. Could you speak up a bit? Excuse me. Your Honor, it's correct that in this appeal, Pan Am has challenged only the factual determinations and exercise of discretionary authority made by the ALJ. They've also challenged, as I read their brief, they've also challenged the amount of punitive damages. That is correct, and that's an exercise of the ALJ's discretionary authority. But you're not contending that discretion is unlimited? No, well, as an initial matter, it's capped by statute, and then within the confines of the statutory crack. Sure. It's not unlimited, no. And what troubles me is that even if you assume that factual findings are supportable to the extent that punitive damages are warranted, I'm struggling with the notion that punitive  And I immediately find that problematic, because I look at the reasons that the ALJ and the ARB gave, I'm conscious of our case law that says you will use your discretion if you rely on a factor that is not supported by the evidence or made a factor that is proper. And I see, for example, that the ARB says, well, we've given high punitive awards in other cases and then cites a string of cases that involve awards of roughly 40% as high as this award, not awards that approach the statutory maximum, with the exception of one case. The only statutory maximum case that's cited is a case that involves a particularly unattractive conspiracy. All right? So what's the basis for going to the max in this case? Excuse me, but I believe that the administrative law judge cites some cases which are at the statutory maximum as part of his decision. I may be wrong about that, but I believe that that's the case. He cites two, I believe, the Cain case and the Brody case, and then multiple other decisions where courts or primarily courts have found that statutory maximum is met. But laying out the basis for the punitive damages award, the ALJ found that the particular action taken here, starting with the review of the complaint or the insistence from the law department that Mr. Schultz review the complaint, ALJ also drew an inference that the complaint should be scrutinized. The complaint was scrutinized, and what was termed by Pan Am to be a major discrepancy was found. The evidence showed, following that, that there was no major discrepancy, that there was a minor inconsistency between the two complaints, but there was no major discrepancy. At that point, it's debatable. Reasonable people could reach either result, in my view. But as you pointed out earlier, Pan Am felt the need to exaggerate what was said in the OSHA complaint, and the Pan Am witness, Mr. Schultz, testified that he did. First of all, he testified that there was no stepping down in the OSHA complaint, and then he testified that he fell from the car to the ground. He, on cross-examination, admitted that his testimony was not consistent with the complaint and correct himself. There certainly was a need on the part of Pan Am to exaggerate the inconsistency because it lacked merit. So I don't think it's debatable whether the inconsistency was major or minor. The substantial evidence shows that it was minor. Okay. You're helpfully going through why the maximum, which is a different question, as Judge Selya says, from why punitive damages at all. So I'd like you to go through the list, and then I'd like you to answer a question, which I'll put to you after you've gone through your list. So continuing on with the list of factors, in this case, Mr. Ray was targeted and singled out for his complaint. Instead of raising the issues or the responding to the complaint through the procedures available to it provided by OSHA, Pan Am took it in its hands to threaten and charge and then threaten Mr. Ray with termination of employment as a result of the complaint. The ALJ correctly found that this was interference with the federal process and the process laid out by the statute, and that that was egregious in doing so. The ALJ, in addition, relied on evidence, testimony by Mr. Ray and Mr. Schultz as to, not with respect to the one safety complaint that Mr. Ray did file and was disciplined for, but the safety culture in general at the company, and specifically the fact that Mr. Ray had reported several weeks prior to the injury the existence of this safety hazard. Pan Am took no action as a result of it. The evidence in the record showed that the Pan Am supervisor, when alerted of this particular safety hazard, said, it's on my list, I'll get to it when I have men to do so. There was clear evidence in the record that when there is an injury, a safety violation results in an injury complaint. In each case, there is a disciplinary hearing. When there is a safety violation, more generally, that does not result in an injury, there may or may not be the hearing. And it's that sort of inconsistency in pursuing hearings, depending on their injury, whether there's an injury or not, that strikes at the heart of the purposes of HRSA, which is to encourage, without retaliation, the reporting of injuries. All right. My question is this. Here the maximum is given. There is an argument that something under the maximum should have been given to save the maximum for the most egregious cases. And one can easily imagine cases much more egregious than this one. And while it's true it's a discretionary decision, there ought to be some sort of sliding scale approach to this. Now, there's no case law that says, establishes that proposition, and there's certainly no agency law that establishes that proposition either. But it's a sort of commonsensical approach. So do you have a response to that? I guess I would point out a couple of things. The first is that within once there is evidence that a significant award of punitive damages is warranted, as you pointed out earlier, within that, there's certainly discretion of the ALJ to act within that sort of band of the significant award. I guess I would also say that with the... You're not contending at all that that discretion is unlimited? No. I mean, it seems to me that once you can say that there is a universe of reasonable awards of punitive damages, that can certainly be exceeded if the ALJ decides to use an elephant gun to kill a mosquito. That is not what happened here, and I think the evidence supports that. But if this was before a district court, for example, the cap, the existence of the cap, would not be provided to the jury. And just because there is a cap doesn't mean that the $250,000, that only the most egregious case warrants a reward of $250,000. The finder of fact, or the jury or the ALJ in this case, should award the amount of punitive damages that are appropriate based on the employer's conduct to deter and punish the misconduct. And whether that's, you know, the cap operates simply to bring down to that cap any awards that are in excess, but it doesn't, the presence of the cap doesn't prevent it. The case law is exactly that. Are you suggesting the ALJ here actually thought the punitive damages award should have been more than $250,000 and limited it? There's no statement to that effect. That would be speculation. Yeah. But again, the award, the cap operates to not, the cap operates to bring down excessive awards. First the cases can go before an ALJ, who's obviously familiar with the statute, familiar with the cap. It also can proceed to district courts. And the cap operates to bring excessive awards above $250,000 down to that cap. It doesn't reserve for that number only those awards or only those cases that are the most egregious case. One more question. The Supreme Court in that EEOC subpoena case from the other day talked about the fact that there's greater institutional confidence in that case in the district court because they deal with warrants all the time, subpoenas, excuse me. And that's a good reason why the Court of Appeals should not be deciding de novo whether the district court was correct or not. So I'm just curious, how many of these sort of cases involving punitive damages awards go before Department of Labor ALJs? Is this a common thing? Uncommon? I mean, first of all, the ALJs deal with a number of whistleblower statutes in other industries such as energy and transportation and airplanes in addition to the railroads. So I can't give you an overall absolute number, but certainly the ALJ in this case was able to identify several decisions. And this was 2013, I believe, or 2014. It was able to identify several decisions at that time where other ALJs or the ARB had awarded significant punitive damages. Although I can't give you an absolute number, there certainly are a number, a significant number, of additional ALJ or ARB decisions out there that have considered the issue of punitive damages and awarded various amounts depending on the circumstances of that particular case.  Thank you. While you're lucky, you've had a preview of what concerns us. That's correct, Your Honor. My name is Stephen Fitzgerald, and I represent the intervener, Jason Ray, who of course is the employee of the petitioner. And I think I should appropriately keep my comments focused on the punitive damages issue. The amount. Then the amount. And Your Honor raises the question and makes the statement that we can all imagine circumstances that perhaps might be more serious than we find here. I would suggest on Mr. Ray's behalf that there is no circumstance that's more serious than what we find here, in that the ALJ found that the intent of the discipline that Mr. Ray faced was in order to retaliate against him and intimidate him from exercising his rights under the Federal Rail Safety Act. If that intimidation flows not only to Mr. Ray but to those of his co-workers who are paying attention, then it will clearly be the case at Pan Am Railways that everyone, all the workers will get the message that no matter how serious the safety hazard that they wish to report, the injury that they wish to report, or in Mr. Ray's case, retaliation for actually bringing a complaint to a Federal authority, if all of that invites the retaliation of their employer, then it quashes all that the FRA was intended to accomplish, which was to encourage these workers to bring these issues forward to the Department of Labor. So in that regard, I would submit that this is the most serious. The interference with the Federal investigation is, I would suggest, as you read the ALJ's very recent rationale for giving the maximum punitive damage award, that's what drove him primarily. And I also wish to point out, in response to what counsel for the respondent said, the ALJ appropriately cabined off and considered the culture at Pan Am, very appropriately. First and foremost, he analyzed the facts that justified the award of punitive damages before he addressed the culture. Now, the culture, in and of itself, is outrageous, and it perhaps motivated him, in part, to give the maximum punitive damage, but he didn't start with the culture. All right, but let's talk about the evidence of the culture. What is there in the record? Sure, so in the record, there was the testimony that Your Honor referred to from Mr. Schultz, who testified at the hearing, that in 99% of the cases, when an employee is injured, there is an investigation that's brought. Now, let's identify what type of investigation that is, because it's not an investigation to try to make the workplace more safer. The investigation is a disciplinary hearing, because as it was established in the testimony at the hearing, if you're a worker at Pan Am Railways, and you slip on snow and ice, then you violated the rule to walk carefully on snow and ice, and therefore you are in the crosshairs of a disciplinary hearing with potential consequences. It's not about cleaning up the ice. Excuse me, he said this is required by the collective bargaining agreement. There's a perfect response for that. What is the mechanism that the company has to see that its safety rules are followed? I'm sorry, two things in response. First and foremost, the testimony that was established at the hearing was that there is no requirement that they exercise the CBA disciplinary process in order to find out what happened. There's no requirement that they have to initiate a disciplinary process in order to investigate how somebody was hurt. Second of all, the FRSA, at subsection H, says that the rights afforded to the workers under the statute are not limited by any agreement. Of course, if that was the case, any time a railroad could point to a collectively bargained disciplinary process as a defense, then it would eviscerate the FRSA in its entirety. In sum, I'm sorry. What else do you have to say? We have a few more minutes. The only other thing I would point out is that when the ALJ identified the reasons for arriving at his conclusion that the maximum award was justified, he set out other precedent, and we've identified at pages 46 and 47 of our brief the two other exact dollar amount awards, one of which is from this circuit in the case of Worcester versus Springfield Terminal and a case called Barati, which they both happen to be out of the district courts. But in both of those cases, the $250,000 award was given on the issue of discretion, I would say. I believe the standard your honors have to look to is that even if you disagree with the amount, the question is whether or not it was an abuse, and I would argue that it clearly was not in light of these facts. Thank you. It clearly was not? I'm going to rest on clearly. I'll be very brief. Just a couple of points. Number one, on the question of the safety culture and the ALJ's reliance on what happened with regard to Mr. Ray's prior injury and the reprimand that was given to him, again, I would stress that OSHA determined that that was nothing illegal about that, and it should not be context or any evidence that could support an award of punitive damages. What about the fact that he had earlier reported his railway ties sitting as a safety hazard out there and nothing was done about it? Well, and counsel is correct that what was done about that was it was reported to the track department and it had not gotten to that on the list of it. How much time? I think it was a little less than three weeks. It could have been done, Your Honor. But the other issue with that is OSHA addressed that in its decision that became a final order of the secretary, and it said that what happened there was Mr. Ray saw the pile, he knew it was hazardous, and he stepped onto it anyway. He could have had the train move in one direction or another, and he didn't do it. The second point I would address is the question about cases in which the maximum amount of punitive damages have been given. There's one other case involving a decision of an administrative law judge that was affirmed by the ARB where the only thing that happened was an investigation, and that's the Vernace case. It was $1,000 in punitive damages there. And then finally, the question about conducting investigations under the disciplinary hearing. In this case, the company had reason to believe that Mr. Ray had been dishonest, and that's where that would be addressed is through the disciplinary process. But it charged him actually with more than dishonesty, disloyalty to the company. There were like four or five horrific charges when apparently the only thing you worried about was the supposed discrepancy. The discrepancy, Your Honor, was what the company believed represented dishonesty. So why did you overcharge? I don't have an answer for that, Your Honor. Thank you. Thank you.